Based on the docket is McCallum v. General Electric et al. Sherry Knutson and Chris Requito. Ms. Knutson, you're up first. May it please the court, Honorable, my name is Sherry Knutson and I represent the KE defendants. The issue before this court is whether the lower court abused its discretion in denying the KE defendants' motion to dismiss out-of-state plaintiffs based on the Doctrine of Forum Nonconvenience to warrant disturbing the plaintiffs' choice of forum. The burden is on the KE defendants to show that the relevant public and private interests strongly favor the alternative forum as proposed by the defendant, which in this case was the plaintiffs' home states. Currently, there's 18 plaintiffs from other states who are seeking to pursue their claims in this lawsuit. There were six additional plaintiffs, however, they filed a motion to dismiss with this court because they've settled their claims. So my argument will focus on the 18 out-of-state plaintiffs who are not seeking dismissal. To use a phrase that this court used in the low case, not a gossamer thread binds the claims of the 18 out-of-state plaintiffs to the state of Illinois. Their claims are product liability claims that relate to gadolinium-based contrast agents, which are called GBCAs for short. Those are prescription drugs. They need to be administered under the approval of a physician. And the two products here were Omiscan or Optimart. And these 18 plaintiffs allege in their complaint that they were administered Omiscan and or Optimart in another product, Magnavis, which is a product of a party that's not in this lawsuit, at 13 different medical facilities in 10 different states in the District of Columbia. None of those states are Illinois. None of these plaintiffs were exposed to the product in Illinois. None of the parties are Illinois residents. None of the witnesses are in Illinois. And alleged injuries did not occur in Illinois. When the plaintiffs have little to no connection, here it's no connection, to the state of Illinois, the private and the public interest factors weigh strongly in favor of forum nonconvenience dismissal. And in this case, the trial court abused its discretion in denying the GE defendant's motion based on the totality of the circumstances, all of the relevant private and public interest factors need to be considered when a court is conducting a forum nonconvenience analysis. And if we start with looking at the private interest, the convenience to the parties, none of the parties are from Illinois. None of the witnesses are in Illinois. The alleged conduct... What about the McCallums? The McCallums are in Illinois. We have not moved as to dismiss them with regard to forum nonconvenience. Okay. With regard to the 18 out-of-state plaintiffs, none of those witnesses are in Illinois. We know from the complaint, as I said, where the products were alleged to have been administered at states outside of Illinois, and a prescribing physician would need to approve that administration. We know that the testimony of the prescribing physicians is highly relevant in a product liability suit. The plaintiff's Fourth Amendment amended complaint contains eight allegations alleging that there were misrepresentations and failures to warrant to the prescribing physicians. So that testimony is highly relevant to this case. Does the record reflect specific witnesses that would be inconvenienced? The names of the witnesses are not identified. The evidence that the GE defendants put forward was from the complaint. The complaint lists the facilities where the plaintiffs alleged that the product exposure occurred, and there would need to have been a physician who would have approved those administrations at those out-of-state facilities. Is that fatal? I assume you don't think that's fatal to your motion. No, I do not. I do not believe that's fatal to our motion that we do not have the names of those doctors. We're supposed to assume that these people are going to be inconvenienced? Well, we know that they'll be inconvenienced because they're not within the state of Illinois. How do we know that? So if we look at the discovery that would need to be taken, if this case were to proceed in Illinois, in order to take just the discovery depositions of out-of-state physicians, GE would be inconvenienced. They would need to get commissions from the trial court. They would then need to go get subpoenas in these other states. Sometimes that requires opening another action. That is an inconvenience to GE. We also know that the witnesses would be, excuse me, that GE would be inconvenienced if a trial were to go forward in Illinois. Because there would be no subpoena power over the physicians who are at the medical facilities where the plaintiffs are alleged to have received these administrations. So that is the inconvenience that we know from the face of the complaint that exists in this case. But there's no affidavits from specific witnesses that would say that it would be inconvenient for me or our medical facility to have to come to Illinois? There's no affidavits that say that, and there's a few important points on that. First, affidavits are not required by Supreme Court Rule 187 or by the Illinois Supreme Court. Specifically, that was addressed in the Gridley case. Also, these are prescribing physicians, and in Illinois, under the Petrillo case, GE has no ability to have ex-parte communications with physicians who treated the plaintiffs. That is forbidden. There would be no mechanism for GE to go to the physicians and obtain affidavits from them. So that can't be required in order for GE to carry its burden of proof, because that's an impossible hurdle in a case like this, where the prescribers are key witnesses, key third-party witnesses, to the product viability claims, given the learned intermediary doctrine. With regard to the other private interest factors, access to evidence, there's no evidence within Illinois, and I've touched on the compulsory process for the lack thereof that would exist over these prescribing physicians at the facilities where the plaintiffs are alleged to have received their gadolinium administrations. With regard to the one more thing on private interest factors, the court, in its order, relied on the Langenhorst and the Guarine cases, and concluded that this was a type of case where there really was no forum that had a predominant connection to the case. And those cases are good law, but they're distinguishable in this case. They are very, very different, factually. In Langenhorst and Guarine, as well as Bird, which is one of the cases that the plaintiffs are relying upon, there was a connection to the forum that had been chosen by the plaintiffs. There were witnesses within that forum. So there was a connection to the chosen forum, and given the nature of the accidents that had occurred in those cases, there were connections in other locations, different counties, different states, depending on the case. So Dottie looked at Guarine and explained what that case held. That case held that where potential trial witnesses are scattered among several different counties, including the plaintiff's chosen forum, and no single county enjoys a predominant connection to the litigation, then the plaintiff may not be deprived of the chosen forum. The very important point of that is that there were trial witnesses within the plaintiff's chosen forum. That is not the situation here. Just as Dottie distinguished Guarine, the same factual circumstances are here, and those cases are distinguishable in this case. They do not apply because there are no witnesses, there is no evidence, and no connection to the chosen forum. Moving on to the public interest factors, the home states of the 18 out-of-state plaintiffs would have a greater interest than Illinois in resolving those claims. As the Dottie court indicated, there is a local interest in resolving local controversies. Those courts would also have an interest in applying their own law. The law of the plaintiff's home states would apply to their claims, and that would be an inconvenience to both the court and the jurors in Illinois to have to apply the law of 10 different states to this case for the 18 remaining plaintiffs who hail from 10 different states. In addition, there is no reason to have Illinois jurors bearing the cost or the burden of jury service to resolve the claims of the 18 out-of-state plaintiffs, and that is particularly true given the lack of a connection to Illinois with regard to those 18 plaintiffs. Did you all file a motion to sever? We did file a motion to sever at the same time that the forum nonconvenience motion was filed. And that was presumably denied also, right? That motion was denied in the same order in which the trial court denied the forum nonconvenience motion. There was some suggestion at the oral argument in the briefing that those two motions were contingent upon each other, and the trial court judge at the hearing indicated that he did not believe they were. So that's not before this court hearing, you think? That's correct. From his order, he first denies the motion to sever. He then goes on to consider the merits of the forum nonconvenience motion. So the trial court properly did not view those two motions as contingent upon each other, and that issue has not been presented. Was there a request to take that up also on the interlock court hearing? No, not that I'm aware of. You all didn't make that request? We did not make a request to take up the motion to sever. To my understanding, that's not an appealable decision at this point. Okay. The public interest factors require that cases without significant factual connections to the particular forum here at Illinois be litigated in convenient forms to ensure that jurisdictions are not unfairly burdened with litigation in which they have no interest or connection. There's no reason to burden the Illinois courts or juries with applying the law of 10 different states or with resolving the claims of 18 plaintiffs who have no connection to this state. And based on all of these factors, considering them all together as a court must, it is GE's position that it did prove that its chosen forum, the home states of the plaintiffs, was substantially more convenient and appropriate than Illinois, and that the trial court abused its discretion in denying its motion. Thank you. Thank you. Morning, counsel. Morning. Good morning. My name is Christopher Puido. I represent the plaintiffs, and I am here to ask you to affirm the trial court in this matter because I don't believe the trial court abused its discretion. I know that this court has heard many arguments with respect to forum issues, but I'd like to begin at least a little bit by touching upon something Justice Goldberg asked about, which is the connection between the severance motion and the forum motion because they are related in at least a sense. I believe that the defendants have judicially admitted that a consolidated action, at least, is a convenient mechanism for cases of this style. When the argument was heard, and it was brief, and we filed in relationship to the severance, we filed the pleadings that General Electric filed asking the multidistrict judicial panel of the federal court to consolidate the cases. When General Electric stood between the three-judge panel of the federal court, it said the following. I'm reading from my oral argument that was presented in front of Judge O'Malley, but this was in our pleadings, and it was presented to the court, and it's a matter of the record. This comes from General Electric's pleadings. Here, transfer of these actions is appropriate because these actions involve one or more common questions of fact, and transfer will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the actions by preventing duplicative discovery. And, of course, that's the purpose of the federal system for multidistrict litigation. Yes. Right? But in the federal court, there's a procedure set up for that, to consolidate cases in a chosen forum that have similarities so that they can all be tried at the same time. That's true. And do they not then also, once all the preliminary matters are together, they're sent back to their local forums for trial? Typically, yes. Although they set bellwether trials, and it's a consolidated, but you're right. Ultimately, in the end, if they're going to go back to trial, they go back. Which would not be the procedure in this case. There's no intention of sending these back to West Virginia or Michigan or anything else, right? No. Judge O'Malley, I think, touched upon that when he said in the argument that anything, as he put it, and I think it's pretty colorful at times, that any seed that a judge creates, a judge can render asunder, I believe, is his exact language. So he was saying that if it becomes unworkable, and he touched upon that, that maybe you could try all the Alabama cases one way. But that's not your intention. You know, if it became unworkable, it would be, but right now, no. Let me make sure I understand what you're saying. He wasn't talking about sending them back to Alabama. He was talking about trying them in St. Clair County, the Alabama group. He did say that. But he also said that he could render the seed asunder if he found that mechanism unworkable. So he did touch upon that. And the point I'd like to make, though, is, and I understand that there are differences between the MDL procedure and this, but the issues, the issues before the court are much the same. The issues, and they were trying to convince a three-judge panel to consolidate these matters. And they were trying to convince this panel by suggesting that the convenience of the parties would be aided by the consolidation of them. And then when they come to St. Clair County, which they don't want to be at, and I don't mean anything bad by that. I mean, every skillful lawyer is going to try to pick a forum that presumably benefits their client. But when they come before St. Clair County, they say, oh, it's inconvenient for us to come here. I understand that there's a difference. Well, that's apples and oranges because, as Judge Stewart mentioned, in the MDL procedure, it's then sent back for the ultimate trial to their local jurisdictions. And that's not, you know, what was intended. I don't believe it's apples and oranges with respect to the allegations and the argument that they make to get that. I mean, they use the word convenience to parties and witnesses when they do that. And so I did want to point that out that I think that there is a connection. And in the modern world in these mass court cases, and by the way, councilmates, note that there's 18 plaintiffs. If you take out the derivative consortium claims, I believe that there's 13 claims. There are five spouses, but we all know that those claims are derivative and depend upon the success of the injured party. Well, as far as the number of claims, I mean, if, let's say, in this case, we affirm and say this is okay, what's to stop you from having 200 claims by this time next year from all over the country? The Class Action Fairness Act, for one thing, Justice Stewart, the Class Action Fairness Act, which is a federal act, I mean, just the way the honest modern practice would operate, any pleading. And again, it does relate. But anyway, the Class Action Fairness Act answers the question. Any mass joiner beyond, I believe, 99, it might be 90, but between 90 or 99 can be then be removed to federal court. Well, let me modify my question, 98. What's to keep us from having 98 claims a year from now and from all over the country? And, you know, answer the argument that your opponent makes about aren't you really just creating your own St. Clair County MDL? You know, I don't think so. If you really look at Supreme Court Rule 384, there is a procedure that perhaps could be used for that mechanism. I don't think you're trying to create a modern MDL. I do think that we're using the joiner rules in a way that is permissible. And, frankly, when you look at 2-404 and the way that modern joiner rules operate, and that's analogous to Federal Rule 20. So I think we're using the joiner rules in a way that is permissible. I don't think that creates some sort of MDL procedure itself. I just don't. Well, each of these plaintiffs have separate actions that are to be given separate consideration, et cetera, et cetera, right? It's like we instruct our juries every time. Yes, sir, they all have their own individual actions. So what is it about having the McCallums, the only Illinois plaintiffs in here, that makes this a proper forum for all these out-of-state plaintiffs? Because I think if you go through the factors, you can't say that Judge O'Malley abused his discretion in deciding it the way that he did. There's going to be travel regards on this. And as they've admitted and General Electric has admitted in their other pleadings, much of the case, much of the case is going to be directed. It's a product liability case involving a molecule which is used at MRI scans. Much of the case, I don't care if it's right in Pennsylvania or in Illinois, and, of course, since we're dealing with interstate forum, the connection is is whether Illinois, the state, not just Simpler County, but the state has a connection. That is the forum that has to be considered. And whether the cases are going to be tried wherever, most, and that's what they were talking about here, most of the case will be involved with the studies, the research, the testing, the marketing of this particular product, which is then inserted in MRI scans. And so when you look at it from that standpoint, then the convenience of the litigants, the access to proof, it's no different than if it were tried in any place in Illinois than in any other state. I think that's my answer. Assuming that you've got to try all of them at one time. Assuming that. But I don't think that that was good. Let me ask you this. And I can't remember where I saw it here, unfortunately. A question, what's the status of, it seems like a similar case in Cook County, Booker v. General Electric. Yes, sir. Are you familiar with that case? No, I'm really not, Justice Wallenberg. I mean, I'm familiar with it from our recitation of the brief, but I don't know what happened in the case if that was the question. I didn't know whether this same procedure that you and the plaintiffs have used in our case was used up in Cook County to consolidate or to join these cases. And if that's the case, why not just consolidate these with the Booker case in Cook County? I'm sorry, Your Honor. I will say this. I know it's outside the record, but I want to answer the court's question. At least with respect to Heparin litigation, that's exactly what's happened. Now, that did apply to Supreme Court Rule 384. If you look at that, where the Supreme Court can more or less create an MDL. But there is, I only know that because I was involved in it. But, you know, again, and Judge O'Malley, as he went through the factors, both in his order and his oral argument, you know, he went through the private interest factors. You know, he basically said, he didn't basically say, he did say that the distance in time, modern technology is so shortened, what we would call geographical distance, that there's really no difference whether you're in a contiguous state or you're not. He admitted that there will be travel, but there will be travel regardless of where we're at. As far as the public interest factors, he noted that St. Clair County has a system, a very consistent call, whereby you're not called to the courthouse until and unless, you know, you're needed. And he also noted, this is in the record, that in his experience, there has never been a case that had to be continued to another trial docket because of a lack of a courtroom, because of a lack of judges, or because of a lack of jurors. So I think as you go through it, his orders, I don't want to sit here and either read the order or his comments, but I think if you look at this and you really measure whether or not Judge O'Malley abused his discretion, which is the most deferential standard of review known to Illinois jurisprudence, I don't believe that you could say that he abused his discretion in ruling the way that he did. I would further note, you know, just for the record, that only General Electric perfected their appeal. Mallinckrodt is a party to the case, but Mallinckrodt is not a party to this appeal, that they did not perfect their record. And just one other factor that Judge O'Malley found, and that is he found that there is no predominant. There is no predominant forum for this matter. What difference does it make if there's a predominant forum when what you've done is combined a group of plaintiffs from all over the country? By definition, there would never be a predominant forum then for all of them to go to the same place. So why shouldn't they all be back in their own states under their state's law? Well, you know, I don't think that that's necessarily the approach that the case law says. The case law looks to see whether there is a predominant forum, and if there's not, then there's even more deference. And again, we're dealing with the state of Illinois now because it's an interstate forum. Well, could these out-of-state plaintiffs have even filed this case in Illinois if you didn't have the McCallums in here? You know, that's an interesting question. They didn't challenge venue on the fact that they did business, that they're doing business. They didn't challenge on behalf of minimum contacts. You know, I didn't look at it from that angle, but I think they could in light of the fact that those challenges were not brought before the court. But they filed as a motion to sever and the forum motion. So I just don't know, you know, how much business General Electric, in fact, you know, I didn't look at those kind of citizenship questions. I presumably could, otherwise I would have thought we would have been looking at doing business wrong of the venue statute. That's how venue was established for St. Clark County. You know, they didn't challenge venue. You're right. I mean, that's why you did, because venue, I mean, because General Electric presumably does business there. Presumably, yes. Yes, sir. The multi-district argument, the MDL panel basically consolidates it for everything short of trial. Is that correct? Yes, sir. Okay. And by the way, they granted the relief that you requested. There is an MDL. Right. I believe it's in Cleveland, if I'm not mistaken. So you're basically saying they admitted in one forum it's convenient and now they're saying it's inconvenient. Exactly. Exactly. You know, they say one thing to one panel of judges and another thing to another panel of judges. As a practical matter, these physicians are going to be testifying by deposition, aren't they? I apologize. I'm sorry. I'm fighting a cold. As a practical matter, the vast majority of these physicians, if they testify at all, will be testifying by deposition. Is that correct? Certainly. And that's going to be done regardless of where they're done. I don't know how necessary they are. I mean, we're going to be, well, you know, again, I think that there is an element of speculation. The council and GE's argument that they have somehow established their burden on these matters of inconvenience. But certainly, you know, in the modern context of major civil litigation, you know, doctors testify by deposition. They just do. You can't. Randy McAllen, for example, has had a kidney transplant. You know, you can't get a surgeon that does kidney transplants to wait in the hallway of a courthouse for four hours until the lawyers say, you know, you're ready. Are there any further questions? No. Thank you, counsel. Thank you very much. Any rebuttal? Yes. I just want to touch on a few of the questions that were raised. Number one, as counsel conceded, and this court recognized, there is a difference between coordination and MDL. It's a coordination for pretrial purposes. The cases are sent back to the home forms for trial. I'm having a little bit of trouble hearing you. I'm sorry. Speak up just a little bit. Probably not your problem. It's my problem. I'm sorry. There is a difference between the MDL, as everyone has recognized, that they're coordinated for pretrial purposes. The cases are then sent back to their home forms for trial. The prescribing physicians in those forms would be subject to the subpoena power. There was a question raised about most of the time, doctors, their testimony would be presented by deposition. And that was considered in the low case. And this court indicated in that case, yes, in most instances it can be difficult to get a doctor to come to trial. But it's not impossible. And depriving the defendant of that right is a significant factor in the form-on-convenience analysis. So the MDL situation is a very different situation than the present case. Well, the majority of the activity in this file, if it gets tried or if it gets settled, is going to be pretrial, isn't it? The depositions, pretrial motions, every other kind of discovery, and the disputes over discovery. That's going to be the majority of the activity, both on the plaintiff's side and on the defendant's side. Isn't that correct, as a matter of modern trial practice? That is correct, Your Honor. Okay. But even taking depositions of out-of-state positions has an aspect of inconvenience with regard to getting commissions and subpoenas from other states. So even with most of the activity being pretrial, there is an inconvenience. Yeah, but those are actions. Those questions are ministerial as opposed to any great problem. You just have to go do it, find out how to do it in the particular state. Right, but it's an inconvenience that would not exist if the case was pending in a home state because then the prescribers would be subject to the subpoena power and you could take their deposition without going through that process. The Booker case, there were some questions asked about that and how that consolidated proceeding came to be. Those were all individual cases. They were coordinated before Judge Dooling pursuant to 735 Illinois Statute 5-2-1006. So they were not joined. They were not joined. They would have all been individually tried. They've since settled. But one interesting fact, those were all Illinois plaintiffs against Illinois hospitals, GE defendants, BEAR defendants, except for one case filed by an Indiana resident against Illinois hospitals, Indiana hospitals, GE, and BEAR. Judge Dooling dismissed that case and formed that convenience. We put that before the court in our reply brief. So she weighed all the private and public interest factors and found that given that physicians were in Indiana and outside the subpoena power, Indiana law would likely apply, and therefore there was no reason to burden Illinois courts. She dismissed that case. So that's one interesting fact about that. We're not opposed to having coordinated proceedings where there is a connection to the state. That's evidenced by the Booker. Have you brought up the question, had resolution on the choice of laws on these cases? The resolution? The choice of laws on these cases. In Illinois, Judge Dooling concluded that Indiana law would likely apply to the Indiana plaintiff. And in the MDL of the Northern District of Illinois, the judge has concluded that the law of the plaintiff's home states applies. So it's been raised in various cases. In other cases, not in this one. That's correct. Okay. Excuse me. There is an indication that all of the relevant evidence would be GE's conduct that ignores that in a case like this with a prescription drug that the plaintiff has to prove had a different warning been given, had the alleged misrepresentations not been made, the plaintiff wouldn't have been exposed to the product. That testimony is very key to these cases. In addition, one of the factors that can be considered, the plaintiffs are due some deference. It's less deference because they're not from Illinois. But also, the Dottie Court has indicated that where an out-of-state plaintiff files a claim in this forum, it can be assumed that they are engaging in forum shopping. And just as evidence of that, we indicated in our brief there was one of the plaintiffs, Ms. Franco, who already has a case in the MDL. The court can take judicial notice of the fact that there's now five plaintiffs of the 18 who have cases in the MDL. I looked at PACER, the electronic filing system for the federal courts that are preparing for this. So it's something that judicial notice can be taken of. There's four more. The Whittes and the Clarks also have filed claims now in the MDL. So there is an element of forum shopping going on here. There is an intent to create a mini-MDL in St. Clair County. Can't we pretty much always assume there's forum shopping? Sorry? Can't we pretty much assume there's always forum shopping? If you were happy in St. Clair County, you wouldn't be here in this appeal, would you? So, you know, both sides are going to do some forum shopping. That's a fair point. It is a consideration because part of the fairness of the forum nonconvenience doctrine is trying to ensure that forum shopping isn't occurring so that the citizens of Illinois are being burdened with cases that have no ties to this forum. Thank you. Thank you, Counsel. Counsel, thank you very much for your arguments and briefs today. We'll take the matter under advisement and we'll get back to you as soon as we can.